The bill of complaint by 218-220 Market Street Corporation, a corporation, alleges that it is in the restaurant business which it conducts under the name of "Novelty Bar and Grill," and charges that although there exists complete satisfaction on the part of its employes in the matter of wages, *Page 449 
hours of labor and working conditions generally, the defendant Delicatessen and Cafeteria Workers' Local 410, David Herman, business agent of the defendant union, together with eight supporters named in the bill of complaint, by agitation, propaganda and intimidation, are attempting to force upon the complainant and its employes a closed shop. Annexed to the bill of complaint is a statement signed by all of complainant's employes, eighty in number, in which they "deeply resent" the actions of the defendant union and represent to the court that they are content with the hours of labor and working conditions and that they do not wish to join the defendant union.
Since the filing of the bill of complaint, Moe Adler, Charles Collora and Josephine Jure, presented their petition to the court in which they describe themselves as a committee "appointed by seventy-seven persons, being all other employes of complainant" and pray to be admitted as parties complainants. The prayer of the petitioners was granted.
It is clearly established in the instant case that there exists unwarranted conduct and malicious interference with the business of the complainant-employer and the property rights of the complaining employes incident to the free and uninterrupted continuance of their employment. The evidence shows that by literature distributed among complainant's employes; intercepting employes going to and from their place of employment; entering complainant's place of business against its will and there during business hours interfering with complainant's employes; loitering and picketing in front of complainant's place of business; parading in front of complainant's restaurant with placards indicating that a "strike" was in progress, the defendants sought to force upon the complainant and its employes against their will, membership in the defendant union.
The reason advanced by defendants for their action is contained in the affidavit of David Herman who says that he is the walking delegate of the union; that he learned on May 27th, 1935, that the National Recovery act was declared unconstitutional, and that: *Page 450 
"In view of these developments the Union men who were employed by the Novelty Bar Grill were fearful that the Novelty Bar 
Grill would lower their wages and worsen their conditions. We, the union, held a meeting with the employes of the Novelty on Monday, May 27th. As a result of this meeting we decided that, with the NRA declared unconstitutional and the job of every union man in jeopardy by virtue of the fact that section 7A was no longer in existence, there was only one thing for us to do and that was to present demands for union recognition, thereby insuring the jobs of the union men. As a result of that meeting we sent a letter by Western Union to Mr. Jules Endler asking him to meet with us the following morning, Tuesday, at 10 A.M., for the purpose of arbitrating our difficulties. To this letter Mr. Endler made no reply. In carrying out the decision of our meeting the night before we called a strike at the Novelty Bar Grill at about 11:30 A.M. Tuesday, May 28." (Italics mine.)
Herman was the moving spirit in unjustifiably precipitating the so-called "strike." It appears that some three or four employes had been persuaded to join the union. However, no labor difficulties or grievances existed, and so there was nothing to arbitrate. Not only were all the employes entirely content and satisfied, but there is an absence of proof that there existed any warrant for the fear expressed by the union and Herman that the Novelty Bar and Grill "would lower their wages and worsen their conditions" of employment.
The literature distributed among complainant's employes by defendants prior to May 28th, 1935, definitely describes the true purposes of the defendants. The following are quotations from such literature:
"What is keeping you from joining the union?"
"The union book is the `bill of rights' of every worker. Become a free and independent person! Don't depend on the good nature of your boss, depend on the strength of organized labor!"
Another circular captioned "The Yellow Dog Contract" reads in part:
"It is not unusual for the bosses to be afraid of a Union. Mr. Novelty knows what will happen when we get all of you workers into the Union. It would mean to him that he would have to pay his workers more money. It would also mean to him that he would lose the one thing that all bosses are so fond of having. He would lose *Page 451 
a whip, the whip to fire a worker for the slightest little offense. Mr. Novelty has a lot of things to lose if you all join the Union. But you workers have nothing to lose, you have everything to gain! You can gain the right to live like a human being."
Still another circular reads in part:
"We will fight until we make him sign."
The defendant union recently attempted to unionize concerns in Newark engaged in the restaurant business. Herman, in his affidavit, boastingly refers to his success in unionizing other establishments by the employment of methods similar to those here complained of. Apparently it is Herman's belief that where an employer refuses to unionize his business and employes refuse to join the union, it is lawful for him on behalf of the union to resort to violence; cause the place of business to be picketed and employes to be intimidated. There is in the instant case no strike of employes, but a striking at 218-220 Market Street Corporation's business by Herman, the union and its supporting agitators in an effort to force upon that corporation and its employes the will of the union; to compel it to employ union labor only, and to compel its employes to join the union. Such unwarranted interference with the lawful rights of the complainants is vicious. Gevas v. Greek Restaurant Workers'Club, 99 N.J. Eq. 770; Blakely Laundry Co. v. Cleaners' andDyers' Union, Local No. 18422, 11 N.J. Mis. R. 915;169 Atl. Rep. 541.
The defendants attempted to call a strike but were unsuccessful, and in this attempt they have support neither in law nor in reason. Employes may strike of their own volition but that does not justify the conduct of the defendant union, to which such employes neither belong nor desire to belong, in instigating a strike. Where the object of the picketing is unlawful, irrespective of its militant or intimidating character, such picketing may be restrained whether peaceable in fact or not, since peaceful acts, if unlawful and resulting in irreparable injury, may be enjoined.
An order to show cause containing intermediate restraint *Page 452 
against loitering or picketing in the street near complainant's place of business with intent to procure the personal molestation and annoyance of persons employed or willing to be employed by complainant; parading in the neighborhood of complainant's premises bearing placards or otherwise indicating that a "strike" is in progress at complainant's restaurant, was granted. After service upon the defendants of the order to show cause the restraint therein contained was flagrantly violated. Thereupon a contempt proceeding was instituted against William Tiefenbacher, Albert Hillrigel, David Herman, Manuel Travers, Leonard Romano, Joe Pererra and John Keyser. The matter was heard by Vice-Chancellor Buchanan and the named persons were found guilty of contempt and sentenced. Needless to say once a decree of this court is made, that decree must be obeyed. If the defendants believed that the decree which they violated was erroneous, there was afforded to them the right of an appeal from that decree. So long as that decree remained in force they did not possess the right to violate it.
The violation of the injunction by the defendants pending ultimate disposition of the cause is in itself a sufficient reason for the continuance of the injunction. The defiance displayed by the defendants is potent evidence of its necessity.Nann v. Raimist (New York Court of Appeals), 255 N.Y. 307;174 N.E. Rep. 690.
Preliminary injunction will issue restraining all manner of picketing and all other methods of intimidation and interference with complainant-employer's business and the property rights of the complaining employes incident to the free and uninterrupted continuance of their employment. *Page 453